**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**In re:**

**LAWRENCE FRUMUSA,**

                             **Debtor.**

_____

**MONROE CAPITAL, INC.**

                           **Plaintiff,**

    **v.**

**LAWRENCE FRUMUSA, NICHOLAS**
**FRUMUSA and JOSEPH FRUMUSA,**

                           **Defendants.**

_____

**CASE NO. 09-21527**

**DECISION & ORDER**

**A.P. NO. 09-2110**

## BACKGROUND

On June 5, 2009, Lawrence Frumusa (the "Debtor") filed a voluntary petition initiating a Chapter 11 case. On August 7, 2009, the case was converted to a Chapter 7 case, and Lee E. Woodard, Esq., was appointed as the Debtor's Chapter 7 Trustee ("Trustee Woodard"). On the Schedules and Statements required to be filed by Section 521 and Rule 1007 (the "Schedules"), the Debtor indicated that he was the owner of fifty-two percent (52%) of the membership interest of Frumusa Enterprise, LLC ("Enterprise").

On December 7, 2009, Monroe Capital, Inc. ("Monroe"), as servicing agent for New York Income Partners LLC ("NYIP") and the Robert Morgan Limited Partnership III (the "Morgan Partnership"), commenced an Adversary Proceeding against the Debtor, Nicholas Frumusa ("N. Frumusa") and Joseph Frumusa ("J. Frumusa"), pursuant to Rule 7001(2), to have the Court determine the owner of the

membership interests in Enterprise (the "Enterprise Adversary Proceeding").

The Complaint in the Enterprise Adversary Proceeding asserted that: (1) it was undisputed that the Debtor owned one hundred percent (100%) of the membership interest of Rising Tide Enterprises, LLC ("Rising Tide"), also a Chapter 7 debtor; (2) on February 13, 2008, Rising Tide had transferred property at 182 North Avenue, Webster, New York ("North Avenue") to Enterprise; (3) prior to the filing of his petition, the Debtor had consistently asserted that he owned one hundred percent (100%) of the membership interest in Enterprise; (4) the Court had approved Monroe's offer to purchase North Avenue, but it was unclear, in view of the way the Debtor scheduled only a part of the ownership interest of Enterprise, as opposed to his prior assertions that he owned one hundred percent (100%), whether the Trustee alone had the authority to transfer title to North Avenue or to take any and all other actions on behalf of Enterprise; and (4) based upon the Debtor's historical assertion of his one hundred percent (100%) ownership, this Court should enter an order determining that: (a) N. Frumusa and J. Frumusa had no membership interest in Enterprise; (b) Enterprise was one hundred percent (100%) owned by the Debtor; and (c) the Debtor's bankruptcy estate and Trustee Woodard fully controlled Enterprise and its assets.

After each of the Defendants failed to answer or move with respect to the Summons & Complaint in the Enterprise Adversary Proceeding, that was served upon each of them on December 8, 2009: (1) on January 8, 2010, Monroe filed the necessary papers for the entry of a default judgment against both N. Frumusa and J. Frumusa, upon which, default judgments (collectively, the "Default Judgments"): (a) were entered on January 12, 2010; and (b) determined that only the Debtor owned a membership interest in Enterprise; and (2) pursuant to decisional law in the Second Circuit, on January 8, 2010, Monroe filed and served a motion for the entry of a default judgment against the Debtor (the "Default Judgment Motion"), which was made returnable on January 20, 2010.

The Debtor failed to interpose Opposition to the Default Judgment Motion by January 15, 2010, as required by the Court's procedures, which were clearly stated in the notice that was served along with the Default Judgment Motion, so that the matter was stricken from the Court's January 20, 2010 calendar.

The Default Judgment Motion asserted that: (1) the Debtor had failed to answer, plead or otherwise defend the Enterprise Adversary Proceeding by the required date of January 7, 2010; and (2) the Court should determine that the Debtor alone owned one hundred percent (100%) of the membership interest in Enterprise.

On January 19, 2010, the Debtor filed an Answer and Counterclaim Including a Motion to Dismiss the Complaint Seeking Determination of Interests in Property Pursuant to Federal Rule of Bankruptcy Procedure 7001 (the "Answer and Counterclaim"). The Answer and Counterclaim asserted that: (1) "Plaintiff fails to state a cause in which relief can be granted, Just because Judge Ninfo order an invalid sale is not cause to take assets away from persons;" (2) Monroe lacked standing; (3) the Defendants did not receive service of the action; (4) the Defendants were not served personally or by certified mail; and (5) pursuant to an attached Exhibit B, N. Frumusa and J. Frumusa each owned twenty-four percent (24%) of the membership interest in Enterprise.[1]

Notwithstanding that the Answer and Counterclaim were untimely, both as to the Summons & Complaint in the Enterprise Adversary Proceeding and the Default Judgment Motion, as a courtesy, because of the Debtor's *pro se* status and the Court's knowledge of all of the controversies involving the Debtor that had been and were before the Court, the Court restored the matter to its February 3, 2010 calendar.

---

[1] Exhibit B consisted of an amended and restated operating agreement (the "Operating Agreement"), entered into as of December 27, 2007, which indicated that the Debtor, N. Frumusa and J. Frumusa had executed the Agreement "as of the date and year first above written," and which, on an attached Schedule A, showed the membership as N. Frumusa 24 units, J. Frumusa 24 units and L. Frumusa 52 units.

**Page 4**

On February 2, 2010, Monroe filed a Supplemental Affidavit in Support of the Motion for Entry of Default Judgment (the "Supplemental Affidavit"), which asserted that: (1) the Summons & Complaint in the Enterprise Adversary Proceeding was properly served upon each of the Defendants by mail, as provided for by the Rules of Bankruptcy Procedure, and as set forth in detail in an Affidavit of Service filed with the Court on December 8, 2009; (2) at a Meeting of Creditors held in the Debtor's case on January 7, 2010, the Debtor testified under oath that he no longer opened his mail; (3) the Debtor had failed to file timely opposition to the Default Judgment Motion by January 15, 2010; (4) the Answer and Counterclaim were untimely both as to the Summons & Complaint and as to the Default Judgment Motion; (5) the Debtor had not formally moved to be relieved from his defaults in connection with the Summons & Complaint and the Default Judgment Motion, and his willful failure to open his mail did not constitute sufficient good cause to be relieved from his defaults; (6) the only assertion made by the Debtor in the Answer and Counterclaim that was relevant to the determination of any ownership interest in Enterprise was the assertion that the Debtor owned only fifty-two percent (52%) of the membership interest and his sons owned the other forty-eight percent (48%), as purportedly evidenced by the Operating Agreement; (7) the Court should reject the Operating Agreement as evidence of

the ownership of Enterprise, for the following reasons: (a) despite the Trustee's request for the business records of the Debtor and Enterprise, the Debtor never provided a copy of the Operating Agreement to the Trustee before the Debtor filed the Answer and Counterclaim; (b) if genuine, the Operating Agreement, dated as of December 27, 2007, was executed within two years of the filing of the Debtor's petition, yet the Debtor failed to disclose the alleged transfers of forty-eight percent (48%) of the ownership interest in Enterprise to his sons on Question 10 of his Statement of Financial Affairs; (c) the assertion of ownership in the Operating Agreement was contradicted by various statements and documents prepared and published to third parties by the Debtor, including: (i) a personal financial statement dated December 12, 2008, a date subsequent to the date of the Operating Agreement, where the Debtor claimed a one hundred percent (100%) interest in Enterprise; (ii) a Resolution of Enterprise, dated February 15, 2008, a date subsequent to the date of the Operating Agreement, signed by the Debtor, which confirmed that the Debtor owned a one hundred percent (100%) interest in Enterprise; and (iii) a December 12, 2008 letter from the Debtor to National City Bank, where once again he asserted a one hundred percent (100%) ownership of Enterprise (the "National City Bank Letter").

At 9:58 a.m. on February 3, 2010, when the Court was on the bench hearing other cases, prior to the Court's restored hearing on the Default Judgment Motion, scheduled for 11:30 a.m. that day, the Debtor filed a Response to the Supplemental Affidavit,[2] which asserted that: (1) when the Debtor had been questioned at a 341 Meeting about the personal financial statement, resolution and National City Bank Letter, included as exhibits to the Supplemental Affidavit, he had indicated that he did not recognize any of those documents; and (2) he believed that the exhibits were not genuine, but may have been created by his former spouse with the assistance of individuals connected with Monroe.

At the hearing on the Default Judgment Motion, the Court rejected the Answer and Counterclaim as untimely, both as to the Summons & Complaint in the Enterprise Adversary Proceeding and the Default Judgment Motion, however, it placed the matter on the Court's February 24, 2010 Trial Calendar to schedule a trial, so that the Court could determine: (1) whether the exhibits to the Supplemental Affidavit were genuine; and (2) the ownership interests in Enterprise, should it be proven by the Debtor that all

---

[2]    The Debtor has a habit of filing papers the morning of a hearing when the Court has no opportunity to read them before a scheduled hearing involving the Debtor, and he then continually cites to those papers in subsequent proceedings, including matters on appeal. The Court advised the Debtor that this practice was unacceptable. Nevertheless, the Court permitted the Debtor at the February 3, 2010 hearing and at other hearings that he attended, to participate, where germane to the issues before the Court and, in fact, as a courtesy, had afforded the Debtor far greater latitude in filing papers and participating in hearings than required by law and the Court's procedures.

**Page 7**

of the exhibits to the Supplemental Affidavit were not genuine, and Monroe was unable to produce any other genuine documents that indicated the ownership interest was other than as set forth in the Operating Agreement and on the Debtor's schedules.[3]  On February 24, 2010, the matter was scheduled for trial on March 24, 2010 at 9:30 a.m.

At the Debtor's request, subpoenas were issued on March 4, 2010, to Robert C. Morgan ("Morgan"), Paul Adams ("Adams"), the principal of Monroe, as well as Trustee Woodard and Michael H. Arnold, Esq. ("Trustee Arnold"), the trustees of the various Chapter 7 LLC entities in which the Debtor had an ownership interest, not including Enterprise.[4]

Morgan, Adams and Trustee Woodard moved to quash the subpoenas (collectively, the "Motions to Quash"), which, after the Court shortened time for the service of and a hearing on the Motions, were made returnable on March 17, 2010.

---

[3]     This was done as a courtesy notwithstanding that:  (1) the Default Judgments had been entered against N. Frumusa and J. Frumusa, determining that they each had no ownership interest in Enterprise; and (2) while the Debtor represented to the Court that N. Frumusa and J. Frumusa were taking actions to move to vacate the Default Judgments against them, at no time have N. Frumusa and J. Frumusa contested the Default Judgments against them in any way, by action, appearance, or otherwise.

[4]     A reading of the subpoenas, including the items to be produced by March 19, 2010 in connection with depositions noticed for March 22, 2010, demonstrate that they primarily addressed the Counterclaim, which the Court had rejected as untimely, rather than the issue of the ownership of Enterprise.

**Page 8**

The Motions to Quash asserted that: (1) the document production requests in the subpoenas were overly broad, asking for documents and information that were not relevant to the narrow issues of the ownership of Enterprise and whether any of the documents attached as exhibits to the Supplemental Affidavit were not genuine; and (2) the subpoenas did not comply with many of the requirements of Rule 45 of the Federal Rules of Civil Procedure and Rule 7026 of the Rules of Bankruptcy Procedure.

On March 16, 2010, the Debtor filed an Affidvit objecting to Monroe's Motion to Quash or Modify Subpoenas, where he: (1) objected to the Court's shortening the time for the Motions to Quash to be heard; and (2) asserted that many of the statements made by Monroe in its Motion to Quash or Modify Subpoenas was false.

On the March 17, 2010 return date for the Motions to Quash, the Debtor failed to appear, and the Court: (1) summarized the status of the Enterprise Adversary Proceeding on the record; (2) quashed the subpoena issued to Morgan, because he was disabled and in a wheelchair, was recovering from surgery, was not going to be called by Monroe as a witness at the trial, and did not have information independent of that possessed by Adams; (3) quashed the subpoena as to Trustee Woodard, since he was also not going to be called by Monroe as a witness at the trial, and he had no

**Page 9**

independent knowledge or information as to the ownership of Enterprise, other than having seen the documents that were attached as exhibits to the Supplemental Affidavit; and (4) limited the ability of the Debtor to depose Adams to those matters directly relevant to the issues of the ownership of Enterprise and the exhibits to the Supplemental Affidavit, and directed that the scheduled deposition be relocated to the first floor attorney's conference room in the Federal Courthouse, in anticipation that it may be in the best interests of all of the parties if the Court were available to supervise the deposition or make requested rulings.

Also, at the March 17, 2010 return date for the Motions to Quash, the Court granted Trustee Arnold's oral Motion to Quash the subpoena issued to him, because, as in the case of Trustee Woodard, he was not going to be called by Monroe as a witness, and he had no independent knowledge or information as to the ownership of Enterprise, other than having seen the documents that were attached to the Supplemental Affidavit.

On March 19, 2010, the Court entered an order granting the Motion to Quash the subpoena as to Morgan and modifying the subpoena as to Adams (the "Morgan/Adams Order").

On March 22, 2010, the Debtor: (1) appealed the Morgan/Adams Order; (2) filed a Motion for Stay Pending the Debtor's Appeal of

the Morgan/Adams Order (the "Motion for Stay Pending Appeal"); and
(3) filed a Motion to Shorten Time for a hearing of the Debtor's
Motion for Stay Pending Appeal (the "Motion to Shorten Time").  The
Court granted the Motion to Shorten Time on March 22, 2010, which:
(1) set March 24, 2010 at 9:30 a.m., as the return date for the
hearing on the Motion for Stay Pending Appeal; and (2) indicated
that should the Court deny the requested stay, the trial scheduled
for March 24, 2010 at 9:30 a.m. would proceed as scheduled.[5]

On March 22, 2010, the Court entered an order granting the
Motion to Quash the Trustee Woodard subpoena (the "Trustee Woodard
Order").

On March 23, 2010, Trustee Woodard and Monroe filed objections
to the Motion for Stay Pending Appeal.  The Monroe objection
asserted that:  (1) it was unlikely that the Debtor would prevail
on his appeal, since he had failed to pay the required filing fee,
as he had failed to do in eight other appeals; (2) the Debtor was
unlikely to succeed on appeal, since the Morgan/Adams Order was
clearly interlocutory, and he had made no application for leave to
appeal the non-final order; (3) the Debtor was unlikely to succeed
on appeal, since the documents and information he was seeking, and
that he was precluded from obtaining, did not relate to the issue
of the ownership of Enterprise and the genuineness of the of the

---

[5]     The Court set forth this provision, since the Court's ruling would
clearly be interlocutory, if it denied the stay.

exhibits to the Supplemental Affidavit, the only issues scheduled to be tried by the Court on March 24, 2010; (4) the Debtor could not demonstrate irreparable harm if the stay were not granted, because, once again, the documents and information he was precluded from obtaining were not directly related to the ownership of Enterprise; and (5) the Debtor had left the March 22, 2010 deposition of Adams, without asking Adams any questions.

On March 24, 2010 at 9:33 a.m., the Debtor filed an Affidavit in Response to the Objections of Monroe and Trustee Woodard to the Motion for Stay Pending Appeal, which the Court read at the hearing on the Motion, and determined that the Response: (1) did not provide any additional information as to the ownership of Enterprise or the genuineness of the exhibits to the Supplemental Affidavit; (2) did not demonstrate that any information or documentation that the Debtor was precluded from obtaining by the Morgan/Adams Order or the Trustee Woodard Order was necessary for him to proceed at trial to demonstrate the actual ownership of Enterprise, proof that the Debtor should clearly have within his own knowledge and control, or for him to defend any assertions that he was the one hundred percent (100%) owner of Enterprise; (3) appeared, once again, to be more directed towards the Debtor's untimely and rejected Counterclaim; and (4) raised an issue of Monroe's standing to bring the Enterprise Adversary Proceeding.

**Page 12**

At the hearing on the Motion for Stay Pending Appeal, the attorney for Monroe indicated on the record that Monroe had standing to bring the Enterprise Adversary Proceeding, because it was the authorized servicing agent for NYIP and the Morgan Partnership, which were creditors with allowed claims in the Debtor's Chapter 7 case.

The Court denied the Debtor's Motion for Stay Pending Appeal, primarily because the Morgan/Adams Order and Trustee Woodard Order were interlocutory, but also because the Debtor had not demonstrated that there was a likelihood of success on the appeal. The Court then directed that the trial of the ownership of Enterprise would immediately go forward (the "Trial").

The Debtor indicated that he would not stay for or participate in the Trial, even though he was subpoenaed to testify by Monroe, because he had not obtained needed discovery and, as a result, was not prepared to go forward, whereupon the Debtor left the Courthouse.[6]

---

[6]    After hearing the witnesses and reviewing the exhibits produced at the Trial, the Court believes that the real reason the Debtor left the Courthouse and did not attend or participate in the Trial, is that he observed the individuals sitting in the Courtroom who would be called as witnesses, and he knew that the documents they would produce, and the testimony that would be elicited, would prove that he was the one hundred percent (100%) owner of Enterprise.

Notwithstanding this subsequent observation, at the time that the Debtor indicated that he would not stay for the Trial, the Court stated that if insufficient evidence was presented at Trial to establish the ownership of Enterprise, it would adjourn the Trial.

**Page 13**

At the Trial, Alan Adams ("A. Adams") (unrelated to Adams), principal of Adams Mortgage Capital; Michael Ray ("Ray"), a C.P.A. and member of Bonn, Shortsleeve & Ray; Gary Robinson, principal of GRCR, Inc. and Bulldog Consulting; and Bridget Martin ("Martin"), executive assistant to Paul Adams, testified.

At Trial, A. Adams testified that: (1) he was a commercial mortgage loan broker who had a number of dealings with the Debtor and various LLC entities owned by the Debtor, and had introduced the Debtor to National City Bank, which had granted the construction loan for Scenic Village I, an apartment and townhouse complex in Webster, New York; (2) as a mortgage broker with a relationship with the Debtor, he often received personal financial statements from the Debtor, along with tax returns and other financial information, often by e-mail; (3) included in his business records was a copy of Plaintiff's Exhibit 11 at Trial, which was admitted into evidence: (a) as a business record of A. Adams, kept in the ordinary course of his business; and (b) as an admission against interest as to the Debtor, which was a personal financial statement, signed and dated by the Debtor on April 7, 2008, which indicated that the information contained therein was as of March 21, 2008, and the Debtor scheduled as of that date on the financial statement, specifically Schedule 4, Investments in Real Estate, that he was the one hundred percent (100%) owner of North

**Page 14**

Avenue; and as of that date, North Avenue was owned and titled to Enterprise.

At Trial, Ray testified that: (1) on November 21, 2008, he was hired by the Debtor to value the Debtor's various business interests in connection with the Debtor's then-pending divorce; (2) in connection with his retention by the Debtor, he requested numerous financial statements, tax returns and projections; and (3) the Debtor turned over to him Plaintiff's Exhibit 16, which was admitted into evidence: (a) as a business record of Ray maintained in the ordinary course of his business; and (b) as an admission against interest as to the Debtor, which was a Preliminary Document Request List of Information Needed for Business Valuation Analysis and Report, dated as of December 1, 2008 (the "Ray Document Request"), and it indicated that the Debtor was, as of December 1, 2008, and always had been, the one hundred percent (100%) owner of the membership interest in Enterprise.

At Trial, Robinson testified that he had: (1) acted as a consultant to, and property manager for, many of the companies owned by Adams, including Monroe; (2) worked with the Debtor in connection with a number of the Debtor's projects, and had received from the Debtor various items of financial information and copies of various e-mails, including a copy of a February 15, 2008 e-mail to Finger Lakes Mortgage, which was admitted into evidence as

**Page 15**

Plaintiff's Exhibit 18: (a) as a business record of Robinson maintained in the ordinary course of his business; and (b) as an admission against interest as to the Debtor, which included an Enterprise Resolution regarding a special January 10, 2008 meeting, executed by the Debtor on February 15, 2008, which indicated that the Debtor was the one hundred percent (100%) owner of Enterprise (the "February 15, 2008 Resolution").

At Trial, Martin testified that: (1) she maintained and monitored all of the loan files for loans owned by Adams or Monroe, as well as loans serviced by Monroe; (2) NYIP had purchased the mortgage loan originally held by National City Bank on Scenic Village I (the "National City Bank Mortgage"), and as a result had transferred to Monroe, which serviced the purchased loan for NYIP, the original National City Bank Mortgage loan files obtained from National City Bank; (3) the National City Bank Letter, which was accepted into evidence as Plaintiff's Exhibit 21, was contained in the original loan files obtained from National City Bank in connection with the purchase of the National City Bank Mortgage loan by NYIP; (4) the Letter indicated that the Debtor was the one hundred percent (100%) owner of Enterprise; and (5) what looked to be a signature stamp of the Debtor's name on the Letter was the same as she had seen on numerous mortgage checks and other

**Page 16**

documents provided by the Debtor in his relationships with Adams

and his related companies.

**DISCUSSION**

The evidence produced at Trial, including the testimony of the

witnesses and the exhibits accepted into evidence, including

Plaintiff's Exhibits 11, 16, 18 and 21 at Trial,[7] overwhelmingly

prove that the Debtor, on the date of the filing of his petition,

and since the inception of Enterprise, was the one hundred percent

(100%) owner of Enterprise, and there has been no credible evidence

produced by the Debtor to indicate otherwise.

This conclusion is necessary since: (1) the Operating

Agreement is controverted by a number of the exhibits attached to

the Supplemental Affidavit, which all post-dated the date of the

Operating Agreement, which is the only evidence, other than the

Debtor's self-serving Schedules, produced by the Debtor to

demonstrate that he is not the one hundred percent (100%) owner of

Enterprise; (2) Exhibits 11, 16, 18 and 21 admitted at Trial and

the testimony regarding these Exhibits also proves the Debtor's one

hundred percent (100%) ownership interest at times that were before

and subsequent to the date of the Operating Agreement; and (3) N.

---

[7] There was additional testimony and there were other exhibits admitted
into evidence that also proved the Debtor's one hundred percent (100%) ownership
interest in Enterprise after December 27, 2007, but it is not necessary for the
Court to elaborate on that proof.

**Page 17**

Frumusa and J. Frumusa have not in any way come forward to claim any ownership interest in Enterprise, through the Operating Agreement or otherwise, and the Default Judgments have been entered against them determining that they have no interest in Enterprise.

## CONCLUSION

The Debtor, Lawrence Frumusa, on the date of the filing of his petition, was the one hundred percent (100%) owner of the membership interest in Frumusa Enterprise, LLC, so that his bankruptcy estate is the owner of the interest, and his Trustee, Lee E. Woodard, Esq., has full right and authority to take any and all actions on behalf of Frumusa Enterprise, LLC, and to take control of and administer any assets of Enterprise.

This Court will enter any additional orders that Trustee Woodard may request so that he can take any and all actions he deems necessary on behalf of Frumusa Enterprise, LLC, including conveying good title to any property of Enterprise.

**IT IS SO ORDERED.**

                                   **/s/**
                                   **HON. JOHN C. NINFO, II**
                                   **U.S. BANKRUPTCY JUDGE**


**Dated:  April 14, 2010**


**Page 18**